IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 110136 (Control) |
| | ) | |
| v. | ) | |
| | ) | |
| INN4 LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| INN4 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 110196 |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff (county) appeals the real market value (RMV) of property identified as Account

0188324 (subject property) as determined by the Lane County Board of Property Tax Appeals

(BOPTA) order, dated February 15, 2011.  Defendant (taxpayer) cross-appeals the BOPTA

RMV under case No. TC-MD 110196.   The court on its own motion consolidated the two cases

for issuance of a single decision.

A trial was held by telephone on both cases on July 26, 2011.  David Sohm (Sohm),

Registered Appraiser, Lane County Assessment and Taxation, appeared and testified on behalf of

the county.  David Carmichael, Attorney at Law, appeared on behalf of taxpayer.  Jeff Morton

(Morton), Manager and minority shareholder in Inn4 LLC, appeared and testified on behalf of

taxpayer. Also testifying for taxpayer were John Brown (Brown), an Oregon licensed real estate broker, and Paul Schaffner (Schaffner), an Oregon registered appraiser.

County's Exhibits 1 and 2, and taxpayer's Exhibit 1 were admitted without objection. Optional exhibits and written rebuttals were submitted by the parties. The record closed on August 2, 2011.

## I. STATEMENT OF FACTS

A.      *Procedural Background*

Taxpayer appealed the 2010-11 RMV to BOPTA. BOPTA reduced the property's RMV from $4,720,059 to $3,900,000 and the assessed value (AV) to $3,900,000, as follows:

| Real Market Value | Found by Assessor | Found by Board |
|---|---|---|
| RMV of Land (MKLND): | $1,702,989 | $1,702,989 |
| RMV of Improvements(s) (MKIMP): | $3,017,070 | $2,197,011 |
| Total: | $4,720,059 | $3,900,000 |
| Maximum Assessed Value: | $3,980,964 | $3,980,964 |
| Assessed Value (before exemptions) AVR: | $3,980,964 | $3,900,000 |

(Ptf's Compl at 2.)

The county requests that the court restore the RMV and AV to $4,720,059 and $3,980,964, respectively. (*Id*. at 1.) On cross-appeal, taxpayer requests the court decrease the RMV to $2,800,000. (Def's Compl at 1.)

B.      *Property Description*

The subject property is a 100 room motel built in 1977 and currently known as the Quality Inn. It is located in Springfield, Oregon. (Ptf's Ex 1 at 6.) The property is a limited service freeway oriented motel. (Def's Ex 1 at 2.) Jeff Morton and Rod Kempf (Kempf) purchased the property in 2005 for $2,825,000. (Def's Ex 1 at 19.) The buyers (Morton and

Kempf) subsequently renovated the motel in 2005 and 2006 at a cost of approximately $700,000. (Def's Ex 1 at 19; Ptf's Ex 1 at 2.) The renovation "reduced the number of rooms from 119 rooms to 100 rooms, but added numerous suite units as well as a meeting room, a continental breakfast area and a new covered entry. On December 7, 2006 the ownership was transferred to Inn 4, LLC, which is simply a limited partnership involving the same parties." (Def's Ex 1 at 19.)

The property is located in the Gateway area of Springfield, adjacent to Beltline Road and the I-5 freeway. (Ptf's Ex 1 at 2.) The property is still under the Quality Inn flag.

Both parties agree there are some problems with the property. It is an older facility built in 1977 and updated in 2005 and 2006. Morton, Manager and minority shareholder in Inn4 LLC, testified that many of the rooms are unusually narrow (10 feet wide), and the ceilings are lower than 8 feet, which is less than the typical industry standard for newer facilities of 9 feet or higher. In addition to those physical limitations, the property has considerable competition close by. The property must compete with a number of hotels and motels in the immediate vicinity that are newer, with better flags, and in a slightly better location, being grouped together and nearer to restaurants and shopping.

Additionally, a new hotel adjacent to the subject constructed in 2009 obstructs the public's view of the subject, making it more difficult to be seen by prospective occupants. That newly constructed hotel also blocks the subject's exposure to the sun for a portion of the day. Morton testified that as a result of the new construction, the subject property does not "see the sun" until noon or later.

Also, travelers approaching from the south (northbound on Interstate 5) encounter the difficulty of having to cross several lanes of traffic in a short distance to get to the left turn lane

on Beltline Road to access the subject property, whereas the group of seven hotels and motels to the south are accessed by a right turn from the right hand lane that travelers are in when they get off the freeway from the South. Southbound travelers (vehicles coming from the north), on the other hand, have equal access to both venues.

C.      *The Parties' Value Evidence*

In estimating the 2010-11 RMV of the property for the Tax Court appeal, the county's registered appraiser, Sohm, testified that he relied on the market and income approaches to value. For the market approach, Sohm used six sale comparables to determine a price per room of $49,500, that generated an indicated value of $4,950,000 for the subject 100 room motel. (Ptf's Ex 1 at 16.) The sales were recorded on April 14, 2008; April 17, 2008; July 25, 2008; September 22, 2008; May 22, 2009; and May 7, 2010. (*Id*. at 4-14.) For the income capitalization approach, Sohm used a potential gross income (PGI) of $1,616,850. (*Id*. at 17.) After deducting estimated expenses that Sohm itemized for a total of $1,002,447, or 62 percent of PGI, Sohm arrived at a net operating income (NOI) of $614,403. (*Id*. at 18.) Applying a loaded income capitalization rate (cap rate) of 11.53 percent (10.5 percent base rate plus 1.032 percent tax rate), Sohm arrived at an indicated value of $5,328,734. (*Id*.) Sohm's 10.5 percent base cap rate was derived from his six comparable sales used in the sales comparison approach, with the greatest weight given to the May 2009 sale. Finally, Sohm subtracted $182,811 for personal property to arrive at a final indicated value of $5,146,000 (rounded). (*Id*.) Sohm gave greater weight to the income approach and arrived at a final value conclusion of $5,100,000 as of January 1, 2010. (*Id*.)

Taxpayer's appraiser, Schaffner, also valued the property under the market and income approaches to value, although his approaches were somewhat atypical. For his income approach,

Schaffner used actual income, expense and occupancy data to project long-term stabilized income, expenses, and NOI. (Def's Ex 1 at 43-45.) Schaffner explains in his report that his approach "entails estimating a reasonable, average daily rate and occupancy for the subject property to derive an effective gross income. Expenses associated with operating and maintaining the subject property are then estimated and deducted to arrive at a stabilized net operating income." (*Id*. at 43.) Schaffner explains in his report that he then capitalized his net income using a rate derived from recent sales of similar properties to arrive at a final indication of value under the income approach. Schaffner made some adjustments to his data at trial, reducing the amount of property taxes that he subtracted as an expense (from $73,034 to $44,061), and arrived at an NOI of $323,500, which he capitalized at 10.5 percent, for an indicated value of $3,081,000. Schaffner testified that that figure includes furniture, fixtures, and equipment (FF & E). (*Id*. at 48-49.) Schaffner estimates the contributory value of the FF & E at $250,000. (*Id*. at 52.)

Schaffner's market approach was more atypical. Schaffner explains in his report that he did not rely on a direct sales comparison approach because of the wide variation in the price per room derived from analyzing the sale transactions, a variation that resulted from the significant difference in the age, location, size and type of construction of the available sales. (*Id*. at 49.) Instead, Schaffner explained that "[a] better comparison analysis which overlaps with the Income Approach to Value * * * compares the price per room and the net operating income per room." (*Id*. at 50.) Applying that approach, Schaffner found that the indicated value per room for the subject property was $32,350, which Schaffner multiplied by the number of rooms (100), for an indicated value of $3,235,000 as of January 1, 2010. (*Id*. at 51.) Schaffner placed primary reliance on his modified market approach to value and concluded with a value for the subject of

$3,100,000 as of January 1, 2010. (*Id*. at 52.) Subtracting the $250,000 FF & E results in a final value estimate of $2,850,000. (*Id*.)

## II. ANALYSIS

The issue before the court is the tax year 2010-11 RMV of taxpayer's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)).

RMV is defined in the applicable statute as:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).[1]

RMV is to be determined by methods and procedures adopted by the Oregon Department of Revenue in accordance with certain statutorily enumerated principles. ORS 308.205(2). Those statutory principles that must guide the Department in its promulgation of valuation methods and procedures require an RMV determination based on "[t]he amount a typical seller would accept or the amount a typical buyer would offer that could reasonably be accepted by a seller of property[,]" and require that "[a]n amount in cash shall be considered the equivalent of a financing method that is typical for a property." ORS 308.205(2)(a) and (b).

The Department's rule, in turn, generally provides for the valuation of all real property based on the consideration of the three standard approaches to valuation. OAR 150-308.205-(A)(2)(a).[2] Those approaches are the sales comparison approach, the cost approach, and the

---

[1] References to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

[2] References to the Oregon Administrative Rules (OAR) are to the current edition of those rules.

income capitalization approach. *Id*.; *see also* Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). The rule does not require the *use* of all three approaches, but merely the consideration thereof.

RMV as defined above "should be distinguished from other definitions. It is the value based on market worth rather than investment expectation or insurance value. *See* Appraisal Institute, *The Appraisal of Real Estate*, 20-21 (12th ed 2001)." *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 12, (2001) (*Chart*).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted).

The evidence provided must be competent evidence of the requested RMV of a property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002); *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

In this case, both parties are seeking affirmative relief; the county is requesting an increase in RMV and the taxpayer a further decrease.

/ / /

The subject property is a limited service motel, an income-producing property. There are admittedly problems with the property. It is an older facility built in 1977 and updated in 2005-2006. Many of the rooms are unusually narrow (10 feet wide), and the ceilings are lower than typical for the industry at less than eight feet versus nine feet or higher for newer facilities. It also must compete with a number of hotels and motels in the immediate vicinity that are newer, with better flags, and slightly better locations being grouped together and nearer to restaurants and shopping. Also, the subject has a location problem in terms of its visibility because a new hotel constructed in 2007–2008 blocks the view of the subject. There is also an access problem for travelers approaching from the south (northbound on Interstate 5).

Both parties relied on the income and sales comparison approaches, although taxpayer's sales comparison approach is a modified income approach.

The court finds that because the subject property is an income producing property, the best approach to value the subject is the income approach. *See CLP Elements LLC v. Benton County Assessor*, TC-MD No 100662D, WL 1837667 at *6 (May 10, 2011) ("The court concludes that, because the subject property is an income producing property that was fully occupied at the time of assessment, the income approach should be given the most consideration.") The income approach "relies on the assumption that a willing investor will purchase a property for an amount that reflects the future income [that the property will produce]." *Allen v. Dept. of Rev.*, 17 OTR 248, 253 (2003). Although there are two techniques for determining the expected future income, direct capitalization and discounted cash flow, both appraisal reports relied upon the direct capitalization analysis approach to determine the subject property's real market value. That is the approach typically used by appraisers and the one seen most often by this court.

Sohm presented a value estimate utilizing accepted standard appraisal techniques and methodologies. Importantly, Sohm's data was derived from the market. Schaffner, on the other hand, relied on actual data from the subject property for 2009, which he admitted on cross-examination, was the worst year in the property's recent performance history. For example, gross revenues for the subject property range from $1,649,030 in 2008 to $1,127,691 in 2009. (Def's Ex 1 at 45.) At the same time, the expense ratio increased significantly from 64.6 percent in 2008 to 75.1 percent in 2009. (*Id.*) Occupancy rates also declined drastically, from 51.8 percent in 2008 to 35.7 percent in 2009. (*Id.* at 43.) Interestingly, there was essentially no change in the average daily rate between 2008 and 2009. It would seem as though the property experiencing a decline in revenue would attempt to increase occupancy by reducing rates, although such an approach may generate correspondingly greater expenses that would counteract any increased income. The owners of the subject, Morton and Kempf, admitted they know more about the hotel/motel industry than the court.

While the court has concluded that Sohm utilized more accepted appraisal techniques, the court nonetheless finds the county's appraisal to have an overly optimistic view of the future, and relies on data too far in the past, when the lodging industry experienced a better overall performance. At the same time, the court finds that taxpayer has presented too gloomy a picture, focused on a particularly bad year (2009), from which Schaffner essentially derived all of his value evidence and conclusions.

The court spent considerable time evaluating and adjusting the respective experts' data and, in the end, arrived at a value very close to that found by BOPTA. Accordingly, rather than make a minor adjustment in the value, the court finds that the $3,900,000 RMV found by BOPTA should be sustained.

While the court could conclude at this point, a final comment about the handling of taxes under the income approach seems warranted. "This court has indicated a preference for an income approach that removes property taxes from expenses and uses a capitalization rate that includes an effective tax rate for property taxes." *Morse Hays L.L.C. v. Benton County Assessor*, TC-MD No 100697C, WL 2621890 at *5 (July 5, 2011). The court agrees with the county that property taxes should be removed from operating expenses when calculating the operating expense ratio.

Sohm computed a property tax rate using the Oregon Department of Revenue's rule for computing the effective tax rate. He testified that he computed an "effective tax rate" by taking the "actual tax rate," $19.1273 per thousand, multiplying it by the "changed property ratio" .5393, to arrive at a property tax rate of 1.032 percent. (Ptf's Ex 1 at 18.) He concluded that the rate of 11.53 percent was the correct overall capitalization rate.

Taxpayer's representative challenged Sohm's methodology. The property tax projection used by Sohm was $97,011. (Ptf's Ex 1 at 17.) This property tax expense was subtracted from operating expenses, which increased net operating income to $614,403. Taxpayer's representative alleged that Sohm had overestimated the property taxes in order to increase the net operating income. The actual 2009-10 property taxes were $73,034. (Def's Ex 1 at 47.) Taxpayer's representative also pointed out that the calculated effective tax rate underestimated the property tax when applied to net operating income: $614,403 ÷ 1.032 = $59,535. Taxpayer raised a legitimate concern. However, taxpayer did not present an alternative effective tax rate. The court accepts the county's overall capitalization rate of 11.53 percent.

/ / /

/ / /

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that the subject property's tax year 2010-11 total real market value should remain undisturbed at $3,900,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of the subject property identified as Account 0188324 for tax year 2010-11 is $3,900,000.

Dated this ____ day of January 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on January 24, 2012. The Court filed and entered this document on January 24, 2012.*